**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | | |
|---|---|---|
| CRUNCH LOGISTICS INC., T/A MONTY'S | : | |
| SANDWICH SHOP, on behalf of itself and all | : | |
| others similarly situated, | : | |
| Plaintiff, | : | |
| | : | No. 5:21-cv-00639 |
| v. | : | |
| | : | |
| DONEGAL INSURANCE GROUP, | : | |
| Defendant. | : | |

_____

# O P I N I O N

**Plaintiff's Motion to Remand, ECF No. 12—DENIED**
**Defendant's Motion for Judgment on the Pleadings—ECF No. 15—GRANTED**

**Joseph F. Leeson, Jr.**                                                    **June 11, 2021**
**United States District Judge**

## I.    INTRODUCTION

This putative class action is one of many insurance coverage disputes stemming from the

effects of the COVID-19 pandemic on the ability of restaurants to operate.  Plaintiff Crunch

Logistics Inc. ("Crunch") owns and operates a sandwich shop in Southampton, Pennsylvania.

Crunch seeks to represent a nationwide class of similarly situated restaurants and contends that it

and the class are owed coverage for COVID-related economic losses under commercial property

insurance policies issued by Defendant Donegal Insurance Group ("Donegal").  After this Court

granted Crunch's request to voluntarily dismiss a nearly identical class action[1] Complaint against

Donegal, Crunch commenced the instant action in the Pennsylvania Court of Common Pleas for

---

[1]      _See Crunch Logistics Inc. v. Donegal Insurance Group_, No. 5:20-cv-02525.  Unlike the
instant action, the previous action was commenced in federal court.

Philadelphia County.  Donegal removed the case to this Court, invoking federal jurisdiction under the Class Action Fairness Act of 2005 ("CAFA").

Presently before the Court are two motions:  Crunch's motion to remand the case to state court, and Donegal's motion for judgment on the pleadings.  For the reasons set forth below, Crunch's motion to remand is denied, and Donegal's motion for judgment on the pleadings is granted.

## II.    CRUNCH'S MOTION TO REMAND

### A.    Relevant Procedural Background

On May 28, 2020, Crunch filed a federal class action Complaint against Donegal in this District under case number 5:20-cv-02525.  *See* ECF No. 1.  Crunch's Complaint sought a declaration under the Federal Declaratory Judgment Act that Crunch and the class were entitled to coverage under the terms of commercial property insurance policies issued by Donegal.  *See id*.  At the time the Complaint was filed the case was assigned to United States District Judge Timothy Savage.  Donegal filed its Answer to the Complaint on August 12, 2020.  *See* ECF No. 7.  On October 6, 2020, the case was reassigned from Judge Savage to the Undersigned.  *See* ECF No. 13.  This Court held a Rule 16 conference with counsel on November 30, 2020, at which time discovery deadlines were set and class certification was discussed.  *See* ECF Nos. 17-18.  However, shortly thereafter, on December 3, 2020, Crunch filed a notice and request of voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(2).  *See* ECF No. 20.  Donegal filed objections to Crunch's request on December 11, 2020, arguing that Crunch failed to state any reason for the request and that the true reason was Crunch's desire to avoid this Court's jurisdiction.  Notwithstanding the conspicuous timing of Crunch's request and the

absence of an explanation for it, the Court granted the request and dismissed the matter without prejudice.  *See* ECF No. 22.

Shortly thereafter, on December 23, 2020, Crunch commenced the instant action by filing a class action Complaint against Donegal in the Pennsylvania Court of Common Pleas for Philadelphia County.  *See* ECF No. 1-4.  Crunch's second class action Complaint is essentially identical to its prior Complaint, [2] in that it asserts a single claim for declaratory relief as to its and the class's right to coverage under commercial property insurance policies issued by Donegal. *See id*.  Crunch's second class action Complaint also avers that "[d]iversity of citizenship does not exist under the Class Action Fairness Act of 2005 because, upon information and belief, over two-thirds (2/3rds) of the proposed class and Defendants are both citizens of Pennsylvania." *Id*. ¶ 5.  Nonetheless on February 11, 2021, Donegal removed the case to this Court on the basis of CAFA jurisdiction.  *See* ECF No. 1.  Crunch filed its motion to remand the matter to state court on March 3, 2021, *see* ECF No. 12, and Donegal filed its motion for judgment on the pleadings on March 25, 2021, *see* ECF No. 15.  Both motions have been fully briefed.

**B.      Legal Standards and Applicable Law**

*1.      Removal and CAFA jurisdiction*

Under the removal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).  Ordinarily, "[r]emoval statutes are to be strictly construed, with all doubts to be resolved in favor of remand."  *Brown v. Jevic*, 575

---

[2]      Crunch's now-dismissed federal class action Complaint sought declaratory relief under the Federal Declaratory Judgment Act; the instant class action Complaint seeks declaratory relief under Pennsylvania's Declaratory Judgment Act.

F.3d 322, 326 (3d Cir. 2009).  As the party removing a case, the defendant has the burden of demonstrating that federal jurisdiction exists and removal is proper.  *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) (explaining "a party who urges jurisdiction on a federal court bears the burden of proving that jurisdiction exists"); *see Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007).

Donegal removed this action based on the grant of federal jurisdiction set forth in CAFA. The "primary objective" of CAFA is "ensuring Federal court consideration of interstate cases of national importance."  *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013). Notwithstanding the strict construction normally owed to removal statutes, because "Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court," the Supreme Court has explained that "no antiremoval presumption attends cases invoking CAFA."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); *Gallagher v. Johnson & Johnson Consumer Companies, Inc.*, 169 F. Supp. 3d 598, 602 (D.N.J. 2016).

CAFA expands the scope of traditional federal diversity jurisdiction, *see* 28 U.S.C. § 1332(a), to include "mass actions" that meet certain requirements.  *Haley v. AMS Servicing, LLC*, No. CIV. 13-5645, 2014 WL 2602044, at *3 (D.N.J. June 11, 2014).  Specifically, CAFA confers federal jurisdiction over class actions in which the class contains at least 100 people, the amount in controversy exceeds $5,000,000, and (A) any member of the class is a citizen of a state different from any defendant, (B) any member of the class is a foreign state or citizen of a foreign state and any defendant is a citizen of a state, or (C) any member of the class is a citizen of a state and any defendant is a foreign state or citizen of a foreign state.  *See* 28 U.S.C. §§ 1332(d)(2), (5)(B); *see also Dart Cherokee Basin Operating Co*., 574 U.S. at 84-85.

2.    *Remand and the "interests of justice" exception to the exercise of CAFA jurisdiction*

CAFA also contains three exceptions to the exercise of federal jurisdiction, one discretionary and two mandatory. *See, e.g.*, 28 U.S.C. §§ 1332(d)(3)-(4). Crunch argues that CAFA's discretionary exception to the exercise of jurisdiction is applicable here, warranting a remand of this action to state court. Specifically, Crunch argues that this class action presents local and unsettled legal issues unique to Pennsylvania, and as such this Court should, in its discretion, decline to exercise jurisdiction under 28 U.S.C. § 1332(d)(3). Section 1332(d)(3) provides, in full, as follows:

> A district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction under paragraph (2) over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed based on consideration of—
>
> (A) whether the claims asserted involve matters of national or interstate interest;
>
> (B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;
>
> (C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;
>
> (D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;
>
> (E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and
>
> (F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

"These factors are designed to elicit whether the parties' dispute is 'uniquely local' as opposed to multistate in character." *Dicuio v. Brother Int'l Corp.*, No. CIV.A. 11-1447, 2011 WL 5557528, at *2 (D.N.J. Nov. 15, 2011). Once a district court is satisfied it has original jurisdiction under CAFA, the party seeking to invoke an exception to CAFA jurisdiction bears the burden of proving by a preponderance of the evidence that the exception applies. *Vodenichar v. Halcon Energy Props., Inc.*, 733 F.3d 497, 503 (3d Cir. 2013).

### C.    Summary of the Parties' Arguments

As noted,  Crunch's motion to remand is based on its contention that "[t]his case involves overwhelmingly Pennsylvania interests," and "although [Crunch] seeks a nationwide class, Donegal has issued 666 policies in Pennsylvania which represent over half of the class."   ECF No. 12-1, at 5.  Crunch avers that "[t]hese 666 policies are going to require the analysis of Pennsylvania law which is not even settled yet." *Id*.  "In addition to the case involving the analysis of Pennsylvania law," Crunch observes that "the parties are Pennsylvania citizens" and Donegal "is headquartered in Pennsylvania."[3]  *Id*.  Therefore, according to Crunch, the totality of the circumstances weighs in favor of declining the exercise of jurisdiction under 28 U.S.C. § 1332(d)(3).[4]  *Id*. at 7.  Crunch also argues that Donegal's removal of this action is "thinly veiled forum shopping."  *Id*.  In support of this argument, Crunch contends that "[t]his Court has already accepted that this action need not be heard by a federal court of limited jurisdiction"

---

[3]      In its reply memorandum, Crunch responds to Donegal's opposition by stating that (1) the applicable standard under CAFA does not carry a presumption in favor of retaining jurisdiction, and (2) the commencement of this action in state court (after voluntarily dismissing the former action from this Court) was not an attempt to avoid federal jurisdiction. *See generally* ECF No. 14.

[4]      As Donegal points out, and in contrast to the representation in paragraph 5 of the instant class action Complaint, Crunch's motion to remand appears to implicitly concede that the threshold requirements for federal jurisdiction under CAFA are in fact present.

when it granted Crunch's request to voluntarily dismiss the previous action over Donegal's objection. *Id*. at 8.  Therefore, according to Crunch, the matter is effectively settled, and Donegal's removal of the action to federal court was improper. *Id*.

In opposing Crunch's motion, Donegal argues that the totality of § 1332(d)(3)'s six factors favor the exercise of jurisdiction in this case.  Regarding the first factor, Donegal states that Crunch's claims involve matters of national and interstate interest, which it claims is confirmed by the definition of the proposed class:  "*All restaurants* that have suffered business interruption and lost income as a result of Civil Authority Orders issued in response to the COVID-19 pandemic."  ECF No. 13, at 6-7 (emphasis in original).  Similarly, Donegal states that the various insurance policies it issued are not confined to Pennsylvania, but rather provide coverage for business in at least fifteen states. *Id*. at 7.  Next, Donegal argues that interpretation of the at-issue policies will require application of the laws of the fifteen states in which the businesses covered by the policies operate; this is because under Pennsylvania law, the law of the state in which an insurance policy is issued and delivered governs the interpretation of the policy. *See id*.  Turning to the third factor, Donegal argues Crunch has engaged in evasive pleading to avoid federal jurisdiction, which it claims is evidenced by Crunch's dismissal of the former action followed immediately by the instant, identical action being commenced in state court. *See id*. at 8.  Fourth, Donegal contends that Pennsylvania lacks a distinct nexus to the class and the claims in this matter. *See id*. at 9.  Citing to CAFA's legislative history and Congress's concern with so-called "magnet courts," Donegal states that the Philadelphia Court of Common Pleas is such a court and because Crunch elected to assert a national class, there is no "distinct" local nexus here. *See id*.  Fifth, Donegal argues that three states other than Pennsylvania (Delaware, Ohio, and North Carolina) have a "strong interest" in this matter based upon the geographic

distribution of the putative class members; therefore, non-Pennsylvania class members are not widely dispersed, and Pennsylvania's interest in litigating this matter is not preeminent. *See id*. at 10. Sixth and finally, Donegal states that in the last three years, one other class action has been filed against it, and argues that as COVID-business interruption disputes continue to generate lawsuits, more class actions are likely, all of which supports an exercise of jurisdiction. *See id*. at 11-12.

Separately, Donegal also argues that Crunch "conflate[s] remand under 28 U.S.C. § 1332(d)(3) with remand under the Declaratory Judgment Act." *Id*. at 12. Donegal observes that "no case cited in Plaintiff's Memorandum addresses remand under § 1332(d)(3)," and "[r]ather, each address discretionary remand under the Declaratory Judgment Act, which requires an entirely different set of considerations." *Id*. "More importantly," according to Donegal, "none of the cases cited by Plaintiff involves subject matter jurisdiction under CAFA." *Id*.

**D.    Discussion**

Donegal has the stronger set of arguments. The Court agrees that upon a review of the factors set forth in 28 U.S.C. § 1332(d)(3), the totality of the circumstances supports retaining[5] federal jurisdiction under CAFA. In illustrating why this is, the Court will address each of § 1332(d)(3)'s factors individually.

**1.    *National or interstate interest***

Regarding whether the claims asserted involve matters of national or interstate interest, the parties' arguments pertain primarily to the geographic scope of the proposed class: Crunch

---

[5]    Crunch does not argue that this Court lacks CAFA jurisdiction in the first instance and instead confines its arguments to the Court's discretion to decline jurisdiction under the "interests of justice" exception. The Court agrees that it has jurisdiction under 28 U.S.C. §§ 1332(d)(2), (5)(B).

argues that it is undisputed that at least half of the proposed class is comprised of entities that are citizens of Pennsylvania, which supports a finding that this matter is a uniquely local dispute; Donegal contends the fact that the proposed class contains no geographic limitations and will include entities from at least fifteen states beyond Pennsylvania supports a finding that this is a matter of interstate, as opposed to local, interest.  In the Court's view, these arguments are of equal weight.  Indeed, as far as class composition goes, Crunch's proposed class appears to run through the midline of the distribution of class actions to which § 1332(d)(3) applies—class actions "in which greater than one-third but less than two-thirds of the members" are citizens of the state in which the action was originally filed.  Therefore, the Court determines this factor to be neutral.

### 2. *Pennsylvania law or the law of other states*

As to whether the claims asserted will be governed by Pennsylvania or by the laws of other States, Crunch argues that it "has only brought one cause of action under the Pennsylvania Declaratory Judgment statute. There are no federal claims or state law claims based on the laws of other states."  ECF No. 14 at 5.  Donegal in turn contends that its "policies were delivered in the states where their respective businesses were located. As such, interpretation of such policies will necessarily require application of" the laws of fifteen other states.  ECF No. 13 at 7.

In a diversity case, the Court applies the forum state's choice of law rules.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  "Under Pennsylvania's choice of law rules, a contract"—such as an insurance policy—"is construed according to the law of the state with the 'most significant contacts or relationship with the contract.'"  *Wilson v. Hartford Cas. Co.*, 492 F. Supp. 3d 417, 426 n.3 (E.D. Pa. 2020) (citing *Gen. Star Nat. Ins. Co. v. Liberty Mut. Ins. Co.*, 960 F.2d 377, 379 (3d Cir. 1992) and quoting *Hammersmith v. TIG Ins. Co.*, 480 F.3d

220, 228 (3d Cir. 2007)).  "That intensive inquiry is only necessary, however, if there is a genuine conflict of laws between Pennsylvania and the other jurisdiction." *Kahn v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, No. 1:20-CV-781, 2021 WL 422607, at *4 n.4 (M.D. Pa. Feb. 8, 2021) (citing *Specialty Surfaces Intl. v. Continental Cas. Co.*, 609 F.3d 223, 230 (3d Cir. 2010)).  "If there is no conflict, then the district court sitting in diversity may refer interchangeably to the laws of the states whose laws potentially apply.  If there is a conflict between the potentially applicable laws, then Pennsylvania uses the 'significant relationship' test of the Restatement (Second) of Conflicts of Laws." *Huber v. Taylor*, 469 F.3d 67, 74 (3d Cir. 2006) (internal citation omitted).

Neither party has stated whether there exists a "true conflict" between the applicable substantive law of Pennsylvania and the applicable substantive law of the fifteen other states in which the putative class members reside.[6]  Yet the Court cannot say such a conflict is unlikely given the number of other states implicated in Crunch's proposed class.  Were a true conflict to exist, the "significant relationship" test would likely require the Court to apply the law of the state where the insured and the insured's property reside.  *See i2i Optique LLC v. Valley Forge Ins. Co.*, No. CV 20-3360, 2021 WL 268645, at *1 n.2 (E.D. Pa. Jan. 27, 2021) ("Pennsylvania conflict of laws principles dictate that an insurance contract is guided by the law of the state in which it was made. *Crawford v. Manhattan Life Ins. Co.*, 208 Pa. Super. 150, 221 A.2d 877, 880 (1966); *see also Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 162 (3d Cir. 2011). The place of making an insurance contract is the place of delivery. *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 745-46 (3d Cir. 1999). In the absence of proof as to the place of delivery,

---

[6]     Nor have the parties stated whether the policies of the putative class members contain choice of law provisions providing which state's law applies, which would almost certainly be dispositive of the issue.

there is a presumption of delivery at the residence of the insured. *Crawford,* 221 A.2d at 881."); *see also Celebre v. Windsor-Mount Joy Mut. Ins. Co.*, No. CIV. A. 93-5212, 1994 WL 13840, at *3 (E.D. Pa. Jan. 14, 1994) ("There are a number of reasons why the principal location of the insured risk should govern which state's law applies in a first-party property insurance case.").

For these reasons, Crunch misses the mark when it contends that because it asserts only a single claim for relief under the Pennsylvania declaratory judgment statute, this case "will be governed by the laws of Pennsylvania only."  ECF No. 14 at 5.  It very well might be that the substantive law of several other states governs the individual policies.  Because the Court cannot answer this question definitively on the record before it, the Court treats this factor as neutral.

### 3.  *Pleaded to avoid federal jurisdiction*

Crunch contends there is no indication that it has pleaded this action to avoid federal jurisdiction; Donegal argues that the circumstances underlying the suit show exactly that.  The Court agrees that the circumstances surrounding Crunch's voluntary dismissal of the first class action Complaint followed by its commencement of the instant class action in state court are too conspicuous to ignore.  In particular, Crunch sought to dismiss its first class action complaint in the midst of the issuance of a number of decisions by courts in this District (and across the country) dismissing similar challenges to denials of insurance claims for losses due to COVID-19.[7]  Crunch moreover provided no reason for its request.  Despite this, for the reasons set forth

---

[7]      *See, e.g.*, *Toppers Salon & Health Spa, Inc. v. Travelers Property Casualty Co. of America*, No. 2:20-CV-03342, 2020 WL 7024287 (E.D. Pa. Nov. 30, 2020); *Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*, 499 F. Supp. 3d 95 (E.D. Pa. 2020); *Wilson v. Hartford Cas. Co.*, 492 F. Supp. 3d 417 (E.D. Pa. 2020); *Real Hosp., LLC v. Travelers Cas. Ins. Co. of Am.*, 499 F. Supp. 3d 288 (S.D. Miss. 2020); *Travelers Cas. Ins. Co. of Am. v. Geragos and Geragos*, No. CV 20-3619, 2020 WL 6156584, at *4 (C.D. Cal. Oct. 19, 2020); *Mark's Engine Co. No. 28 Rest., LLC v. The Travelers Indem. Co. of Conn.*, No. 20-04423, 2020 WL 5938689 (C.D. Cal. Oct. 2, 2020); *10E, LLC v. Travelers Indem. Co. of Conn.*, No. 2:20-CV-04418, 2020 WL 5359653, at *6 (C.D. Cal. Sept. 2, 2020).

in its Order of dismissal,[8] the Court granted Crunch's request to dismiss the matter without prejudice over Donegal's objection.  Almost immediately thereafter, Crunch filed the instant nearly identical class action Complaint in state court.  What is more, the Complaint is, on its face, pleaded in a way that indeed appears to be an attempt to avoid federal jurisdiction.  Specifically, paragraph 5 of the Complaint states that "[d]iversity of citizenship does not exist under the Class Action Fairness Act of 2005 because, upon information and belief, over two-thirds (2/3rds) of the proposed class and Defendants are both citizens of Pennsylvania"—a position that Crunch now concedes, albeit implicitly, is incorrect.

Although Crunch contends that Donegal's arguments in support of this factor "are pure speculation" and points out that its "rationale for the dismissal of the prior case is not contained anywhere in the record," ECF No. 14 at 5, in the Court's view there is sufficient circumstantial

---

[8]     In granting the request, the Court explained as follows:

While the Court has considered Defendant's opposition to dismissal, the circumstances here do not warrant denying Plaintiff's request. "Ordinarily, a motion for voluntary dismissal without prejudice under Rule 41(a)(2) should be granted in the absence of prejudice to the opposing party." *Andreozzi v. Warden McKean FCI*, 828 F. App'x 141, 145 (3d Cir. 2020).  In light of the stage of the proceedings, Defendant will not suffer prejudice sufficient to justify denying the dismissal request.  *See Jose Luis Pelaez, Inc. v. Pearson Educ., Inc*., No. CV 2:16-5216, 2019 WL 2403088, at *2 (D.N.J. June 7, 2019) ("When a plaintiff seeks to withdraw claims, a defendant suffers prejudice when it 'face[s] the prospect of potentially relitigating, at some later date, claims it had put significant time and resources into defending and already litigated to the summary-judgment stage.'" (quoting *Estate of Ware v. Hosp. of the Univ. of Penn*., 871 F.3d 273, 286 (3d Cir. 2017))). The prospect of a defendant having to re-litigate a suit is alone not usually sufficient to constitute prejudice insofar as to warrant a denial of a Rule 41(a)(2) motion to dismiss. *See Estate of Ware*, 871 F.3d at 285 ("We have noted that Rule 41 motions should be allowed unless defendant will suffer some prejudice other than the mere prospect of a second lawsuit.").

ECF No. 22 in CV 20-2525 at n.2.

evidence to conclude Crunch dismissed the prior action and refiled this action in state court to avoid federal jurisdiction.  Indeed, the absence of an explanation as to why the first action was dismissed is more inculpatory than exculpatory.  For all of these reasons, the Court finds this factor to weigh against remand.

### 4. *Brought in a forum with a distinct nexus with the class, the alleged harm, or Donegal*

The fourth factor of § 1332(d)(3) requires the Court to consider "whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants."  28 U.S.C. § 1332(d)(3)(D).  Donegal contends that as Crunch seeks to certify a nationwide class, there can be no "distinct" nexus to Pennsylvania.  *See* ECF No. 13 at 9. Donegal moreover argues that the Philadelphia Court of Common Pleas is a so-called "magnet" court in that it has been identified as a more favorable venue for plaintiffs.  *See id.* at 9-10. Donegal states that part of Congress's motivation in passing CAFA was its concern with such "magnet" courts.  *See id.*  Crunch in turn argues the fact that at least half of the putative class members are Pennsylvania citizens and that Donegal is a Pennsylvania corporation is sufficient to satisfy this factor in favor of remand.  *See* ECF No. 14 at 6.

In the Court's view, this factor weighs against remand.  While Donegal is a Pennsylvania corporation, the relationship between the forum and the class, as well as the forum and the alleged harm, cannot be said to be "distinct."  The putative class is a nationwide class; the fact that at least half of the members are Pennsylvania citizens is not, in the Court's view, a proportion sufficient to characterize the relationship between the class and the forum as "distinct."  Nor is the relationship between the alleged harm—Donegal's failure to honor its obligations under the policies—and the forum "distinct."  Donegal is alleged to have failed to honor its obligations with respect to many insureds in many forums.  Similarly, the underlying

set of circumstances that was the catalyst for the dispute in the first place—the COVID-19 pandemic—is by its very nature a national (and indeed, international) tragedy, one from which insurers and insureds throughout the country have struggled to come to terms with.  It cannot be said that an insurance coverage dispute between a Pennsylvania insurance company and a nationwide class of plaintiffs that stemmed from an international health crisis and which may require, as discussed above, application of multiple states' laws, shares a "distinct" nexus with Pennsylvania.  For these reasons, the Court finds this factor to weigh against remand.

### 5.    *Geographic dispersal of the class*

Section 1332(d)(3)'s fifth factor requires the Court to consider "whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States."  28 U.S.C. § 1332(d)(3)(E).  In support of its arguments with respect to this factor, Donegal cites to Senate Judiciary Committee Report 109-14 concerning passage of CAFA, which states in relevant part as follows:

> If all of the other class members (that is, the class members who do not reside in the state where the action was filed) are widely dispersed among many other states (e.g., no other state accounted for more than 5% of the class members), that point would suggest that the interests of the forum state in litigating the controversy are preeminent (versus the interests of any other state) . . . . [S]uch a conclusion would favor allowing the state court in which the action was originally filed to handle the litigation. However, if a court finds that the citizenship of the other class members is not widely dispersed, the opposite balance would be indicated. A federal forum would be favored in such a case because several states other than the forum state would have a strong interest in the controversy

ECF No. 13 at 10 (quoting S. Rep. No. 109-14 pp. 37-38).  According to Donegal, because three states (Delaware, Ohio, and North Carolina) each have as citizens at least 5% of the share of class members, these states have a "strong interest" in the controversy, and this factor therefore

supports retaining jurisdiction.[9]  *Id.* at 10-11.  Crunch, by contrast, contends that Donegal

"cherry-picks from CAFA's legislative history," and that the "5%" standard does not appear in

the statute itself.  ECF No. 14 at 7.  Rather, Crunch contends that this factor warrants remand

because "Pennsylvania citizens comprise more members of the class than every other state

combined."  *Id.*

      Although Crunch argues that Donegal "purposefully skews the numbers" in its portrayal

of the breakdown of class members by state of residence, *id.*, Crunch does not explain how

Donegal's breakdown is inaccurate.  While the Court agrees with Crunch that CAFA clearly

does not "preclude remand where more than one state features at least 5% of class members," *id.*,

it does not follow that the "5%" standard referenced in Senate Report 109-14 cannot serve as a

helpful benchmark when analyzing this factor, especially in the absence of any benchmark

contained in the statute itself.  The Court concludes that the geographic dispersal of the putative

class, and in particular the fact that several states have arguably "significant" interests in the

controversy based on the number of class members that reside therein, supports retaining federal

jurisdiction.

### 6.   *Other class actions filed against Donegal*

      Finally, the Court must consider "whether, during the 3-year period preceding the filing

of th[e] class action, 1 or more other class actions asserting the same or similar claims on behalf

of the same or other persons have been filed."  28 U.S.C. § 1332(d)(3)(F).  Both parties identify

a single class action filed in the Pennsylvania Court of Common Pleas, Allegheny County:  *Pexe*

*Nori, II LLC t/a Learning Express of Wexford individually and on behalf of a class of similarly*

---

[9]     Donegal supports these numbers with a table in its opposition memorandum displaying
the breakdown of putative class members by state of residence.

*situated persons v. Donegal Mutual Insurance Company*, No. GD-20-005423.  Crunch argues
*Pexe Nori* is significantly different from the instant matter in that the plaintiff seeks to represent
a class of Pennsylvania-only business of all kinds, rather than a nationwide class of only
restaurants.  *See* ECF No. 14 at 7-8.  Donegal argues the existence of the case on its own
counsels against remand, and in addition points to the continued filing of business interruption
lawsuits due to COVID-19 as further support for retaining jurisdiction.  *See* ECF No. 13 at 11-
12.

Because the one class action filed against Donegal in the three years prior to the instant
lawsuit cannot be removed to federal court under CAFA in that it concerns a class of only
Pennsylvania residents, the Court finds that it is sufficiently different so as not to fall within the
ambit of this factor, the purpose of which, as Donegal identifies, "is efficiency and fairness: to
determine whether a matter should be subject to federal jurisdiction so that it can be coordinated
with other overlapping or parallel class actions."  *Id*. at 11.  This factor therefore does not favor
maintaining federal jurisdiction.

### 7.    *"Totality of the circumstances" analysis:  a summary*

The totality of the circumstances in this case weighs against remand and in favor of
retaining federal jurisdiction.  Although one of § 1332(d)(3)'s six factors—the sixth factor, 28
U.S.C. § 1332(d)(3)(F)—does not support retaining jurisdiction, three of the factors—the third, §
1332(d)(3)(C), fourth, § 1332(d)(3)(D), and fifth, § 1332(d)(3)(E)—weigh against remand and in
support of retaining jurisdiction.  The remaining two factors are neutral.  Therefore, Crunch has
not met its burden of showing that the totality of the circumstances weighs in favor of remand by

a preponderance of the evidence.[10]  *See Vodenichar v. Halcon Energy Props., Inc.*, 733 F.3d 497, 503 (3d Cir. 2013); *Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 154 (3d Cir. 2009). *See also Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("[N]o antiremoval presumption attends cases invoking CAFA.").  Accordingly, Crunch's motion to remand pursuant to 28 U.S.C. § 1332(d)(3), *see* ECF No. 12, is denied, and the Court will proceed to address Donegal's motion for judgment on the pleadings.

## III.    DONEGAL'S MOTION FOR JUDGMENT ON THE PLEADINGS

### A.    Facts Alleged in Crunch's Complaint[11] and the Insurance Policy

Crunch owns and operates Monty's Sandwich Shop ("Monty's") in Southampton, Pennsylvania.  *See* Crunch's class action Complaint ("Compl."), ECF No. 1-4, ¶ 6.  Donegal issued Crunch a commercial property insurance policy, number BOP-9019101 ("the Policy"), that included coverage for certain business interruption losses incurred between October 19, 2019 and October 16, 2020.  *See* id. ¶ 8.  The Policy was in full force and effect for all times relevant to the instant action.  *See id*. ¶ 9.

---

[10]    It is additionally worth noting something that Donegal points out:  on the whole, the cases Crunch cites in its primary memorandum concern discretionary remand under the Federal Declaratory Judgment Act rather than jurisdiction under CAFA and the exceptions thereto.  *See, e.g.*, ECF No. 12-1 at 5-7.  The standard for discretionary remand under the Declaratory Judgment Act and discretionary remand under 28 U.S.C. § 1332(d)(3) are distinct and involve application of distinct legal principles.

[11]    These allegations are accepted as true, with all reasonable inferences drawn in Plaintiffs' favor.  *See Lundy v. Monroe Cty. Dist. Attorney's Office*, No. 3:17-CV-2255, 2017 WL 9362911, at *1 (M.D. Pa. Dec. 11, 2017), *report and recommendation adopted*, 2018 WL 2219033 (M.D. Pa. May 15, 2018).  Neither conclusory assertions nor legal contentions need be considered by the Court in determining the viability of Plaintiffs' claims.  *See Brown v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, No. 1:19-CV-1190, 2019 WL 7281928, at *2 (M.D. Pa. Dec. 27, 2019).  Much of the Complaint is legal argument regarding construction of insurance policies and the at-issue Policy in particular.  These assertions are not included in the Court's recital here, except where necessary for context and continuity.  Additionally, the Court recites the language of the Policy itself rather than Crunch's allegations as to the Policy's terms as alleged in the Complaint.

The Policy contains the following relevant provisions regarding "Business Income" coverage:

**(1) Business Income**

> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to the property at the described premises. The loss of or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

Policy, Form BP 00 02 12 99, p. 4 of 19.[12]   The Policy contains the following relevant provisions regarding "Extra Expense" coverage:

**g. Extra Expense**

> **(1)** We will pay the necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

> With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

> (a)  The portion of the building you rent, lease or occupy; and

> (b)  Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

*Id.*, Form BP 00 02 12 99, p. 5 of 19.   The Policy contains the following relevant provisions with regard to "Civil Authority" coverage:

---

[12]   The Court cites to the Policy as it is attached as Exhibit 3 to Donegal's Notice of Removal, ECF No. 1-3.

**i. Civil Authority**

> We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss. The coverage for Business Income will begin 72 hours after the time of that action and will apply for a period of up to three consecutive weeks after coverage begins.

*Id.*  As used in each of the above provisions, "Covered Causes of Loss" means, generally, "Risks of Direct Physical Loss."  *Id.*, Form BP 00 02 12 99, p. 1 of 19.

The Policy also contains several exclusions from coverage.  The relevant exclusion here—from coverage for loss due to virus or bacteria—provides as follows:

**EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA**

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY

The following provisions apply with respect to the insurance provided by the Businessowners Property Coverage Form.

**A.** The exclusion set forth in Paragraph **B.** applies to all property coverage under all forms and endorsements that comprise this Businessowners Policy, except as provided in Paragraph **C.** This includes but is not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

**C.** However, the exclusion in Paragraph B. does not apply to the following:

  **1.** Loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Businessowners Policy; or

  **2.** Coverage otherwise provided under the Food Contamination Endorsement **BPD 04 31** or the Food Contamination Additional Coverage included in the

> Businessowners Plus Property Enhancement Endorsement (if one of those endorsements is attached to this Businessowners Policy).

**D.** With respect to any loss or damage subject to the exclusion in Paragraph **B**., such exclusion supersedes any exclusion relating to "pollutants".

**E.** The terms of the exclusion in Paragraph **B**., or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Businessowners Policy.

Policy, Form BPD 06 01 01 19.

On March 6, 2020, Pennsylvania Governor Tom Wolf issued a proclamation of disaster emergency, the first formal recognition of an emergency situation in the Commonwealth of Pennsylvania as a result of COVID-19. Compl. ¶ 63. On March 19, 2020, Governor Wolf issued an order requiring all non-life-sustaining businesses in the Commonwealth to close all physical locations; businesses that were permitted to remain open were required to follow "social distancing practices and other mitigation measures defined by the Centers for Disease Control." *Id.* ¶ 64. On April 1, 2020, Governor Wolf issued a stay at home order to the entire Commonwealth of Pennsylvania. *Id.* ¶ 65. On, May 8, 2016, Governor Wolf extended the stay at home order until June 4, 2020. *Id.* ¶ 66.

Monty Sandwich Shop closed its doors to customers for indoor dining on March 16, 2020, however it continued to offer carryout and delivery services from noon to 6 p.m. Monday through Friday. *Id*. ¶ 75. As a result of its closure to indoor diners, Monty's was forced to lay off thirteen employees. *Id*. ¶ 77. At some point in March 2020 (the precise date is not clear from the Complaint), Crunch submitted a claim for business loss to Donegal under the Policy. *See id.* ¶¶ 10, 13, 78. In a letter to Crunch dated April 7, 2020, Donegal denied Crunch's claim, stating as follows:

> Based upon the . . . Exclusion of Loss due to Virus Or Bacteria (BPD 06 01 01 19), there is no coverage under the policy for the claim you have presented.

> Additionally, the Business Income, Extra Expense, and Civil Authority provisions in the policy require direct physical loss of or damage to property, which has not been demonstrated in this claim.

*Id*., Ex. 2.; *see also id*. ¶ 78.  Crunch subsequently commenced suit against Donegal—first in federal court, then in state court—asserting a single claim for declaratory relief that Donegal owes Crunch coverage for its business losses under the term of the Policy.

### B.      Legal Standards and Applicable Law

#### 1.      *Motions for judgment on the pleadings under Fed. R. Civ. P. 12(c)*

"A motion for judgment on the pleadings uses the same legal standard as a motion to dismiss under Rule 12(b)(6)."  *Gardner v. Weltman, Weinberg & Reis Co., LPA*, 414 F. Supp. 3d 708, 711 (E.D. Pa. 2019) (citing *Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004)).  In ruling on such motions, after identifying a claim's necessary elements,[13] district courts are to "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see id*. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))); *Thourot v. Monroe Career & Tech. Inst*., No. CV 3:14-1779, 2016 WL 6082238, at *2 (M.D. Pa. Oct. 17, 2016) (explaining that "[a] formulaic recitation of the elements of a cause of action" alone will not survive a motion to dismiss).  Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Iqbal*, 556 U.S. at 679.

---

[13]      The Third Circuit has identified this approach as a three-step process, with the identification of a claim's necessary elements as the first step.  *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 n.4 (3d Cir. 2016) ("Although *Ashcroft v. Iqbal* described the process as a 'two-pronged approach,' 556 U.S. 662, 679 (2009), the Supreme Court noted the elements of the pertinent claim before proceeding with that approach, *id*. at 675-79.  Thus, we have described the process as a three-step approach.") (citation omitted).

Next, if a complaint contains "well-pleaded factual allegations, a court should assume

their veracity and then determine whether they plausibly give rise to an entitlement to relief."

*Iqbal*, 556 U.S. at 679.  "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Id*. at 678.  This standard, commonly referred to as the "plausibility

standard," "is not comparable to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully."  *Id*. (citing *Twombly*, 550 U.S. at 556-57).  It

is only where the "[f]actual allegations . . . raise a right to relief above the speculative level" that

the plaintiff has stated a plausible claim.[14]  *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d

Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

Importantly, a court may grant a Rule 12(c) motion "where there is a 'dispositive issue of

law.'"  *Simmons v. Nationwide Mut. Fire Ins. Co.*, 788 F. Supp. 2d 404, 407 (W.D. Pa. 2011)

(quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).  "[I]f as a matter of law 'it is clear that

no relief could be granted under any set of facts that could be proved consistent with the

allegations,' *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), a claim must be dismissed,

without regard to whether it is based on an outlandish legal theory or on a close but ultimately

unavailing one."  *Neitzke*, 490 U.S. at 327.

As with a Rule 12(b)(6) motion, in adjudicating a Rule 12(c) motion, the scope of what a

court may consider is necessarily constrained:  a court may "consider only the complaint,

exhibits attached to the complaint, matters of public record, as well as undisputedly authentic

---

[14]     As the Supreme Court has observed, "[d]etermining whether a complaint states a
plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw
on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

documents if the complainant's claims are based upon these documents." *United States v. Gertsman*, No. 15 8215, 2016 WL 4154916, at *3 (D.N.J. Aug. 4, 2016) (quoting *Guidotti v. Legal Helpers Debt Resolution*, L.L.C., 716 F.3d 764, 772 (3d Cir. 2013)).  A court may also take judicial notice of certain undisputed facts.  *See Devon Drive Lionville, LP v. Parke Bancorp, Inc.*, No. CV 15-3435, 2017 WL 5668053, at *9 (E.D. Pa. Nov. 27, 2017).

### 2.  *Insurance policies as contracts*

A dispute over coverage arising under an insurance policy "is fundamentally an issue of contract interpretation." *Wilson v. Hartford Cas. Co.*, 492 F. Supp. 3d 417, 426 (E.D. Pa. 2020). Pennsylvania's law of contracts and rules of contract interpretation govern the instant dispute. Under Pennsylvania law,

> [c]ontract interpretation is a question of law that requires the court to ascertain and give effect to the intent of the contracting parties as embodied in the written agreement. Courts assume that a contract's language is chosen carefully and that the parties are mindful of the meaning of the language used. When a writing is clear and unequivocal, its meaning must be determined by its contents alone.

*In re Old Summit Mfg., LLC*, 523 F.3d 134, 137 (3d Cir. 2008) (quoting *Dep't of Transp. v. Pa. Indus. for the Blind & Handicapped,* 886 A.2d 706, 711 (Pa Cmwlth. Ct. 2005)).

In construing an insurance policy to determine whether coverage was improperly denied, a Court must first determine whether a policy's language is unambiguous, or whether it is reasonably susceptible to different readings.  "When policy language is clear and unambiguous, a court applying Pennsylvania law must give effect to that language." *Toppers Salon & Health Spa, Inc. v. Travelers Property Casualty Co. of America*, No. 2:20-CV-03342, 2020 WL 7024287, at *2 (E.D. Pa. Nov. 30, 2020) (citing *Kvaerner Metals Div. of Kvaerner, U.S. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006)).  "When a provision in a policy is ambiguous, however, the policy is to be construed in favor of the insured to further the contract's

prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage." *401 Fourth St., Inc. v. Inv'rs Ins. Grp.*, 879 A.2d 166, 171 (Pa. 2005). A policy's language is ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Id*. (quoting *Madison Construction Co. v. Harleysville Mutual Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999)).

Under Pennsylvania law, "[t]he initial burden in insurance coverage disputes is on the insured to show that the claim falls within the policy." *Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*, No. CV 20-3198, 2020 WL 6545893, at *2 (E.D. Pa. Nov. 6, 2020). "[I]f the insured meets that burden, the insurer then bears the burden of demonstrating that a policy exclusion excuses the insurer from providing coverage if the insurer contends that it does." *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009) (citing *Koppers Co. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1446 (3d Cir. 1996)).

### C.    Summary of the Parties' Arguments

Donegal argues that it is entitled to judgment on the pleadings as a matter of law "for three (3) reasons." ECF No. 15-1 at 6. "First, Plaintiff has not plausibly alleged any direct physical loss of or damage to property, a prerequisite to coverage under the Policy's Business Income, Extra Expense and Civil Authority Coverages." *Id.* Second, with respect to Civil Authority Coverage, Donegal argues that Governor Wolf's shutdown orders did not prohibit access to Crunch's property, and there can be no coverage under this provision accordingly. *Id*. "Finally, even if Plaintiff could plausibly state a prima facie claim for coverage under the Policy, coverage is expressly precluded by a clear and unambiguous virus exclusion, which applies to loss or damage caused by or resulting from any virus that is capable of inducing physical distress, illness or disease." *Id*.

Crunch first argues that although "neither 'direct physical loss' nor 'damage' is defined in the Policy," it has nevertheless adequately pleaded a covered loss.  ECF No. 19 at 8. According to Crunch, Donegal's definition of "physical loss or damage" "is contrary to the plain, reasonable, and intended language of the Policy, and courts nationwide have, in fact, held that 'intangible' causes of loss are covered losses under similar policy terms."  *Id.*  Crunch argues that "[c]ontrary to Defendant's representations, Plaintiff's losses are not solely economic in nature, and numerous courts in jurisdictions across the country agree that physical loss does not require structural damage; rather, lost operations or inability to use the business is sufficient." *Id.* at 9.  Crunch also contends that "[t]he Third Circuit caselaw cited by Defendant supports Plaintiff's interpretation of 'physical loss' and reiterates that physical loss can occur when a property is uninhabitable or unusable for its intended purpose."  *Id.* at 12.  Finally, Crunch contends that whether the covered premises has suffered "physical loss" or "damage" is actually a question of fact that cannot be decided without a factual record.  *See id.* at 12-17.

Crunch next argues that it is entitled to "Civil Authority" coverage because (1) the Governor's shutdown orders were issued as a result of a physical loss or damage to property— this argument incorporating Crunch's previous argument about what constitutes "physical loss" or "physical damage"—and (2) the orders prohibited access to Crunch's premises in that they prohibited operation of walk-in and dine-in service.  *See id.* at 18-24.

Finally, Crunch contends that the Virus Exclusion does not apply, for several reasons. First, Crunch argues the exclusion "is subject to more than one reasonable interpretation when applied to the particular factual circumstances present," and is therefore ambiguous.  *Id.* at 26. This is, according to Crunch, because it has pleaded that its damages resulted from the Civil Authority orders rather than from the virus itself.  *See id.* at 26-27.  Crunch also argues, among

other things, that the Virus Exclusion does not apply because "in no way does it mention a pandemic situation or exclude anything related to the damages incurred as a result of a pandemic." *Id*. at 27.  Crunch lastly asserts that under a theory of regulatory estoppel, "[i]nsurers should be precluded from using the Virus Exclusion because of misrepresentations they made to regulators." *Id*. at 30.

D.     **Discussion**

As unfortunate as the effects of the COVID-19 pandemic have been on the operations and bottom lines of restaurants like Monty's Sandwich Shop, each of Crunch's arguments as to why this Court should deny Donegal's motion for judgment on the pleadings runs up against the heavy weight of case law in this and other jurisdictions.  Simply put, Crunch has not alleged, nor is it able to allege, that it suffered "direct physical loss of or damage to" property at the covered premises; as a consequence it has not shown, and is unable to show, an entitlement to coverage under the Business Income or Extra Expense provisions of the Policy.  Moreover, Governor Wolf's shutdown orders did not "prohibit[ ] access to the described premises," and as such Crunch is not entitled to coverage under the Civil Authority provision of the Policy.  Finally, even if Crunch were able to satisfy the threshold coverage requirements of "physical loss or damage" and prohibited access, the Virus Exclusion unambiguously applies to the circumstances at Monty's Sandwich Shop and operates to preclude coverage

1.     ***Crunch has not suffered a direct "physical loss of or damage to" any property at the covered premises***

In *4431, Inc. v. Cincinnati Ins. Companies*, No. 5:20-CV-04396, 2020 WL 7075318 (E.D. Pa. Dec. 3, 2020), this Court issued a decision on a defendant-insurance provider's motion

to dismiss in a case very similar[15] to the instant dispute.  In *4431*, the at-issue policies defined "Covered Cause of Loss," a prerequisite for coverage, as a "direct 'loss,'" and in turn defined "loss" as "accidental physical loss or accidental physical damage."  *Id.* at *1-*2.[16]  This Court concluded, after surveying the relevant authorities, that "[t]o constitute direct 'physical loss' under the Policies as that term is construed under Pennsylvania law, economic loss resulting from an inability to utilize a premises as intended must (1) bear some causal connection to the *physical* conditions of that premises, which conditions (2) operate to completely or near completely preclude operation of the premises as intended."  *Id*. at *10 (emphasis in original).

Very recently, this Court observed that "[i]n the last six months, numerous decisions from within this Circuit have been issued construing ["direct physical loss of or damage to" property] in connection with insurance claims following business suspensions during the COVID-19 pandemic. These decisions have almost invariably concluded the terms are not ambiguous and there is no insurance coverage for loss of business income."  *Star Buick v. Sentry Insurance Group*, No. 5:20-CV-03023, 2021 WL 2134289 at *4 (E.D. Pa. May 26, 2021).  In *Star Buick*, this Court again concluded, as it did in *4431*, that "loss of use may be covered, but that loss of use must be tied to a physical condition actually impacting the property."  *Id*. at *5 (internal quotation marks omitted).

Before addressing Crunch's pleadings and its arguments in opposition to Donegal's motion, the Court here reaffirms the construction of direct "physical loss" and direct "physical

---

[15]     The insurance policy at issue in *4431* did not contain a virus exclusion.
[16]     The language of the policies in *4431* differed slightly from the language of Crunch's Policy here.  In particular, the policies in *4431* incorporated the terms "physical loss" and "physical damage" into the coverage requirements through the policies' definition of the term "loss."  Here, the Business Income and Extra Expense coverage provisions explicitly require physical loss and/or damage without the need to look to the definitions of any intermediary terms.

damage" that it has applied in its prior decisions and as applied by countless other courts in recent months.  Specifically, "[t]he phrase 'physical loss of or damage to property' unambiguously requires some issue with the *physical* premises that impedes business operations and causes a loss of business income." *Kahn v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, No. 1:20-CV-781, 2021 WL 422607, at *5 (M.D. Pa. Feb. 8, 2021) (emphasis in original); *see, e.g.*, *Hair Studio 1208, LLC v. Harford Underwriters Insurance Co.*, No. CV 20-2171, 2021 WL 1945712, at *6 (E.D. Pa. May 14, 2021) ("Direct physical damage is 'a distinct, demonstrable, physical alteration of the property.'" *Newchops Restaurant Comcast LLC v. Admiral Indem. Co*., Nos. 20-cv-1949, 20-cv-1869, 2020 WL 7395153, at *5 (E.D. Pa. 2020). . . . 'Direct physical loss,' . . . exists when a structure has been rendered uninhabitable and unusable,' causing the owner to suffer a 'distinct loss.'" *Port Auth. of NY and NJ v. affiliated FM Ins. Co*., 311 F.3d 226, 235 (3d Cir. 2002)."); *Paul Glat MD, P.C. v. Nationwide Mut. Ins. Co*., No. 20-cv-5271, 2021 WL 1210000, at *5-*6 (E.D. Pa. Mar. 31, 2021); *Eric R. Shantzer, DDS v. Travelers Cas. Ins. Co. of Am*., No. 20-cv-2093, 2021 WL 1209845, at *4 (E.D. Pa. Mar. 31, 2021); *Tria WS LLC v. Am. Auto. Ins. Co*., No. 20-4159, 2021 WL 1193370, at *3-*5 (E.D. Pa. Mar. 30, 2021); *Chester Cty. Sports Arena v. The Cincinnati Specialty Underwriters Ins. Co*., Nos. 20-cv-2021 et al., 2021 WL 1200444, at *7 (E.D. Pa. Mar. 30, 2021); *Kahn*, 2021 WL 422607, at *6-*7; *Frank Van's, 2021 WL 289547*, at *6-*7; *1 S.A.N.T., Inc. v. Berkshire Hathaway, Inc*., No. 20-cv-862, 2021 WL 147139, at *6-*7 (W.D. Pa. Jan. 15, 2021); *Rest. Grp v. Certain Underwriters at Lloyd's, London*, No. 20-cv-2365, 2021 WL 131339, at *5-*6 (E.D. Pa. Jan. 14, 2021); *Ultimate Hearing Solutions II, LLC v. Twin City Fire Ins. Co*., No. 20-2401, 2021 WL 131556, at *6-*7 (E.D. Pa. Jan. 14, 2021);  *Kessler Dental Assocs., P.C. v. Dentists' Ins. Co*., No. 20-cv-3376, 2020 WL 7181057, at *4 (E.D. Pa. Dec. 7, 2020). *Cf. The Scranton Club v. Tuscarora Wayne Mut. Group,*

*Inc.*, No. 20 CV 2469, 2021 WL 1737089, at *2 (Pa. Com. Pl. May 03, 2021) (noting in the context of claims based on COVID-related loss of business income, that "[as of] January 25, 2021, every federal district court in Pennsylvania which had addressed the 'physical loss or damage' requirement concluded that it was unambiguous and barred coverage." (collecting cases)).  Crunch has failed to show why this Court should now depart from its earlier rulings and the near unanimous[17] weight of case law in the Third Circuit regarding the proper construction of direct physical loss and/or damage to property in the context of a commercial property insurance policy like the one issued by Donegal to Crunch.

With the applicable construction in hand, the Court turns to Crunch's class action Complaint to determine whether its allegations are capable of plausibly alleging that Crunch has suffered "direct physical loss of or damage to" the covered premises such that it might be entitled to coverage under the Business Income and Extra Expense coverage provisions of the Policy.

The totality of the Complaint's allegations relating to any "direct physical loss of or damage to" property suffered by Crunch is as follows:

> 83. Plaintiff has suffered "direct physical loss of or damage" to its property due to the COVID-19 Pandemic. Among other things, COVID-19 made the Insured Property unusable in the way that it had been used before the Pandemic, rendered the property substantially unusable and uninhabitable, intruded upon the property,

---

[17]      Judge Goldberg recently observed as follows:

In the recent case of *Hegedus, Inc. v. ACE Fire Underwriters Ins. Co.*, No. 20-2832, 2021 WL 1837479 (E.D. Pa. Pa. May 7, 2021), one of my colleagues, applying California law, addressed similar policy language and found that the phrase "direct physical loss of or direct physical damage to property" was ambiguous in the context of Business Income and Extra Expense Insurance. *Id.* at *9. The decision held that the plaintiff, who claimed losses due to the mandatory suspension of the in-person operations of its retail furniture store, had alleged a covered cause of loss that plausibly fell within the scope of the policy. In turn, the court found that the complaint was sufficient to survive a motion to dismiss.  *Id.*

*Hair Studio 1208*, 2021 WL 1945712, at *7 n.4.

damaged the property, prevented physical access to and use of the property, and caused a suspension of business operations at the property.

84. The COVID-19 Pandemic also caused physical loss and damage to property near Plaintiff's Insured Property.

85. This loss is physical. Instead of being able to operate Plaintiff's business normally, the Insured Property was required to physically alter and drastically reduce operations, and even to close entirely. To do anything else would lead to the emergence or reemergence of COVID-19 at the location. Given the widespread prevalence of COVID-19, even limited use of the Insured Property was not reasonably safe for extended periods. The high probability of illness and contamination prevents the full physical use of the property.

\*   \*   \*

90. The virus is physically impacting Plaintiff. Any effort by Defendant to deny the reality that the virus causes physical loss and damage would constitute a false and potentially fraudulent misrepresentation that could endanger Plaintiff and the public.

\*   \*   \*

104. An actual controversy has arisen between Plaintiff and the proposed Class and Defendant as to the rights, duties, responsibilities and obligations of the parties in that Plaintiff and the proposed Class contend and, on information and belief, Defendant disputes and denies that:

   a. Property in the area of the Insured Property has experienced direct physical loss or damage; . . . .

Compl. ¶¶ 83-85, 90, 104.

From these allegations it is clear that Crunch does not allege the alteration of any physical condition of or on the covered premises; rather, it alleges it was required to alter and reduce operations at Monty's Sandwich Shop due to the risk posed by COVID-19. While there is indeed a "physical" aspect of the actions Crunch took in response to the risk posed by COVID-19—Crunch physically changed the way in which the property was used—there is nothing in the Complaint that alleges this altered use, and the economic loss suffered, was the result of an alteration to or change of any physical condition of or on the property itself. In this way, while

Crunch undoubtedly suffered a "loss," it did not suffer a "direct *physical* loss."  Because the Complaint fails to allege "direct physical loss of or damage to" the covered premises, and because the Complaint makes clear that no such "direct physical loss of or damage to" property was in fact suffered, Crunch's allegations do not and cannot plausibly show any entitlement to coverage under either the Business Income or Extra Expense provisions of the Policy.

Crunch's primary argument against Donegal's motion on this issue is that, "whether [it] did indeed suffer a physical loss or damage caused by a covered cause of loss is a question of fact, not a legal issue to be determined at the motion to dismiss stage."  ECF No. 19 at 17. Crunch's similarly argues that Donegal's motion "functionally operates as a Rule 56 summary judgment motion, only [Donegal] seeks to obtain its requested relief without permitting Plaintiff to develop the record necessary to develop its case." *Id.*

These arguments are without merit.  There is no material fact in dispute here; rather, it is undisputed that the COVID-19 pandemic and the risk of spread of the coronavirus caused Crunch to drastically limit operations at Monty's, from which Crunch suffered an economic loss. Stated differently, Crunch does not plausibly allege or argue that any aspect of the physical structure of the covered premises was altered in any way.  This is the undisputed material fact that is dispositive of the entire dispute.  Indeed, Crunch's dispute is with the *construction* of the applicable Policy language.  However, "[c]ontract interpretation is a question of law." *In re Old Summit Mfg., LLC*, 523 F.3d 134, 137 (3d Cir. 2008).  Because there is no dispute as to the actual terms of the Policy, only their construction, and because there is no dispute as to the sole dispositive issue—the absence of any plausible allegation of direct physical loss or damage— there is no reason the Court cannot resolve Donegal's motion on the pleadings and without discovery.  Finally, because the Court has not considered anything outside of the Policy,

pleadings, and documents attached thereto, there is no need to convert Donegal's motion to a
Rule 56 motion.

For all of the reasons set forth above, Crunch is not entitled to coverage under either the
Business Income or Extra Expense provisions of the Policy.

### 2.    The Governor's shutdown orders did not prohibit access to the covered premises

Crunch has also failed to allege that access to Monty's was prohibited as a result of
Governor Wolf's shutdown orders.  To the contrary, Crunch affirmatively pleads as follows:

> Prior to March 16, 2020, Plaintiff was opened to all customers from Sunday to
> Thursday from 11 a.m. to 8 p.m., and Friday and Saturday, 11 a.m. to 9 p.m. As a
> result of the Orders referenced herein, Plaintiff shut its doors to customers on March
> 16, 2020 and continues to be shutdown for in-store dining. *See*
> https://www.montysandwich.com/ (last visited December 2, 2020). On March 16,
> 2020, Monty's continued to offer carryout and delivery services from noon to 6
> p.m. Mondays through Fridays. During this time, its dining room was closed.
> Monty's is currently only open for carryout and delivery services on Saturdays.

Compl. ¶ 75.

Leaving aside that Crunch "shut its doors to customers" on March 16, 2020, three days
*before* Governor Wolf's shutdown order, *see id.* ¶ 64, the fact that Crunch continued to operate
carryout and delivery service necessarily means that it was not prohibited from accessing the
premises.  Without a prohibition on access to the covered premises, there can be no coverage
under the Civil Authority provision.  *See 4431, Inc. v. Cincinnati Ins. Companies*, 2020 WL
7075318, at *13 (E.D. Pa. Dec. 3, 2020) ("[I]t is clear that Plaintiffs' ability to continue limited
takeout and delivery operations at the premises precludes coverage under the Civil Authority
provision: a prohibition on access to the premises, which is a prerequisite to coverage, is not
present."); *Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*, 499 F. Supp. 3d 95, 100 (E.D. Pa.
2020) (finding no entitlement to coverage under a civil authority provision in part because "the

Governor's orders limit, rather than prohibit, access to the property"); *see also* March 19, 2020, Order of the Governor of the Commonwealth of Pennsylvania Regarding the Closure of All Business that are not Life Sustaining, Section 2 ("Businesses that offer carry-out, delivery, and drive-through food and beverage service may continue, so long as social distancing and other mitigation measures are employed to protect workers and patrons.").

Crunch's argument that it has adequately pleaded an entitlement to coverage under the Civil Authority provision of the Policy is, at the end of the day, fatally undermined by its own affirmative allegations regarding Monty's continued limited operations, as well as the plain language of Governor Wolf's March 19 Order.  Crunch is not entitled to coverage under the Policy's Civil Authority provision.

### 3. The Virus Exclusion is unambiguous and precludes coverage

Finally, even if Crunch were able to show an entitlement to coverage under the Policy, the Virus Exclusion would unambiguously preclude such coverage.  The Virus Exclusion provides, in relevant part, that "[w]e will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."  Policy, Form BPD 06 01 01 19.  The language of this provision, and its application to Crunch's circumstances, is in no way ambiguous:  Crunch suffered economic loss as a result of the coronavirus, which causes COVID-19; it cannot be disputed that the coronavirus is a virus, which is capable of inducing physical distress, illness or disease—*i.e.*, COVID-19; it follows that the Virus Exclusion precludes coverage for Crunch's losses resulting from the coronavirus/COVID-19 pandemic.

This conclusion is not an outlier.  "Numerous courts, applying Pennsylvania law, have thoroughly addressed arguments regarding the Virus Exclusion's applicability to insurance

claims based on COVID-19 shutdowns. These cases have almost unanimously concluded that the language of the Virus Exclusion unambiguously bars coverage." *Hair Studio 1208, LLC v. Harford Underwriters Insurance Co.*, No. CV 20-2171, 2021 WL 1945712, at *11 (E.D. Pa. May 14, 2021) (collecting cases).

Therefore, to the extent Crunch might have succeeded in showing an entitlement to coverage under the Business Income and/or Extra Expense Policy provisions for its COVID-related losses, which it has failed to do, the Virus Exclusion would clearly act to bar such coverage.

### E.    Leave to Amend

The Court must consider whether Crunch is entitled to amend the Complaint and re-plead their claims. *See Kanter v. Barella*, 489 F.3d 170, 181 (3d Cir. 2007) ("Generally, a plaintiff will be given the opportunity to amend her complaint when there is an asserted defense of failure to state a claim.").  Although leave to amend pleadings, when not as of right, should be "freely give[n] when justice so requires," FED. R. CIV. P 15(a)(2), the denial of leave to amend is appropriate where there exists undue delay, bad faith, dilatory motive, or futility.  *See Holst v. Oxman*, 290 F. App'x 508, 510 (3d Cir. 2008).

Here, it is clear that any amendment to Crunch's class action Complaint would be futile. The terms of the Policy are not in dispute.  There is nothing else Crunch could allege that would bring its claimed losses within the Policy's coverage.  Leave to amend will therefore be denied.

IV.     **CONCLUSION**

For the reasons set forth above, Crunch's motion asking this Court to decline the exercise

of jurisdiction and to remand this matter pursuant to 28 U.S.C. § 1332(d)(3), *see* ECF No. 12, is

**DENIED.**  Donegal's motion for judgment on the pleadings, *see* ECF No. 15, is **GRANTED.**

A separate Order follows this Opinion.

<div style="margin-left:50%">

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

</div>